IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL A. MARTZ, individually and on            )
behalf of all others similarly situated,          )
                            Plaintiff,          )
                                 )
          vs                       )   Civil Action No. 06-1075
                                 )
PNC BANK, N.A.,                                  )
                   Defendant.          )

REPORT AND RECOMMENDATION

I. Recommendation:

        It is respectfully recommended that the plaintiff's motion for class certification (Document No. 36) be denied.

II. Report:

        Presently before the Court is a motion for class certification submitted by the plaintiff, Paul A. Martz.  For reasons discussed below, the plaintiff's motion for class certification should be denied.

        Paul A. Martz, individually, and on behalf of all others similarly situated, commenced this action against defendant PNC Bank, N.A. ("PNC"), complaining that it violated the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq., and regulations promulgated thereunder, 12 C.F.R. § 205, et seq., (collectively, "EFTA"), for which he seeks actual and statutory damages.  In his complaint, the plaintiff alleges that PNC violated EFTA, because its automated teller machines ("ATMs") did not provide him notice that a fee **will** be charged and collected as part of his transaction; rather, its ATMs informed him that a charge **may** be assessed,

even though PNC then assessed a fee and collected it as part of the electronic funds transfer.[1]

It is alleged in the complaint that on April 4 and April 14, 2006, and on May 11 and May 17, 2006, the plaintiff used a PNC ATM in Pennsylvania to conduct an electronic funds transfer involving the withdrawal of cash; that in each of those transactions, PNC's ATM screen informed him that he "may" be charged a fee, not that he "will" be charged a fee; and that he was charged a fee of between $1.00 and $2.00 for each such electronic funds transfer without the defendant providing him accurate notice as required by EFTA. See, 12 C.F.R. § 205.16.[2]  As discussed more fully below, however, the plaintiff now concedes that he does not know if PNC's ATM screens notified him that he "may" be charged a fee, or he "will" be charged a fee, as he merely skimmed the ATM screen and did not fully read it.[3]  The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

In his motion for class certification, the plaintiff seeks to certify a Class consisting of:

> All consumers in the states of Pennsylvania, New Jersey, Virginia, Ohio, Kentucky, and the District of Columbia who initiated an electronic funds transfer at a PNC ATM located in the states of Pennsylvania, New Jersey, Virginia, Ohio, Kentucky, and the District of Columbia, the screen of

---

1.  In his two-count complaint, the plaintiff pled a violation of EFTA in Count I and purported to state a claim for unjust enrichment in Count II.  In an Order dated December 29, 2006, the Court granted the defendant's motion to dismiss Count II.  Thus, PNC's alleged violation of EFTA is the sole remaining claim.

2.  In 12 C.F.R. § 205.16(b), it is provided: "*General.*  An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall: (1) Provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and (2) Disclose the amount of the fee."

3.  See, Martz deposition at pp. 139-140, 143 (at Exhibit 1 to plaintiff's reply brief).

> which gave a notice stating in part that the PNC ATM 'may
> charge a fee...' and were charged a fee for withdrawing cash
> from the PNC ATM, on or after a date one year prior to the
> filing of this action.[4]

The plaintiff moves to certify the Class pursuant to F.R.Civ.P. 23(a) and 23(b)(3).

A district court has discretion under Rule 23 to certify a class.  Beck v. Maximus, Inc., 457 F.3d 291, 297 (3d Cir. 2006).  Before a suit may be certified as a class action, all four requirements of Rule 23(a), and one subsection of Rule 23(b) must be satisfied.  Stewart v. Abraham, 275 F.3d 220, 226 (3d Cir. 2001).  The Third Circuit Court of Appeals has explained:

> Rule 23 is designed to assure that courts will identify
> the common interests of class members and evaluate
> the named plaintiff's and counsel's ability to fairly and
> adequately protect class interests.

In Re Prudential Ins. Co. Sales Litigation, 148 F.3d 283, 308 (3d Cir. 1998).

Under Rule 23(a), the prerequisites to maintaining a class action are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class.  In order to satisfy Rule 23(b)(3), questions of law or fact common to the class must predominate over individual questions, and a class action must be superior to other available methods for adjudicating the controversy.

PNC does not dispute that the numerosity requirement of Rule 23(a)(1) is satisfied.  The numerosity requirement of Rule 23(a)(1) demands that the Class be so large that

---

4.    See, plaintiff's brief in support of his current motion at pp. 1-2.  As verified by plaintiff's counsel, the above definition of the proposed Class is correct, rather than the erroneous definition contained in the plaintiff's motion for class certification.

joinder of all members is impracticable.  In Re Prudential Sales Litigation, 148 F.3d at 309.  The

Third Circuit Court of Appeals has stated: "No minimum number of plaintiffs is required to

maintain a suit as a class action, but generally if the named plaintiff demonstrates that the

potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met."  Stewart,

275 F.3d at 226-27.  Here, the record shows that as of December 31, 2005, PNC operated

approximately 3,700 ATMs, including 1,636 active ATM's in Pennsylvania, 1,083 active ATM's

in New Jersey, 93 active ATM's in Virginia, 115 active ATM's in Ohio, 147 active ATM's in

Kentucky, and 75 active ATM's in the District of Columbia.[5]  From August 1, 2005 through July

31, 2006, 14,871,648 transactions were conducted by non-PNC cardholders at PNC ATM's

located in Pennsylvania, New Jersey, Virginia, Ohio, Kentucky and the District of Columbia, for

which PNC charged the user a fee after its ATM screen informed the user that a fee "may" be

charged for a cash withdrawal.[6]  Since it would be impractical and inconvenient to join a Class

whose members potentially number millions of people, the numerosity requirement is satisfied.

        In opposing class certification, PNC argues that the proposed Class cannot meet

the prerequisites of Rules 23(a)(2), 23(a)(3), 23(a)(4), and 23(b)(3).  We believe that the

proposed Class satisfies the requirements of Rules 23(a)(2) and 23(a)(3); however, we agree that

class certification is inappropriate under Rules 23(a)(4) and 23(b)(3).

        Rule 23(a)(2) requires that questions of law or fact be common to the class.  PNC

argues that the proposed Class does not meet the commonality requirement of Rule 23(a)(2), or

the predominance requirement of Rule 23(b)(3), as the plaintiff seeks to recover actual damages

---

5.    See, declaration of Harry C. Cornell at ¶ 2 (at Exhibit B to PNC's opposition brief).

6.    See, declaration of Sandra W. Dervin at ¶¶ 1-2 (at Exhibit C to PNC's opposition brief).

under EFTA which requires proof of detrimental reliance.  According to PNC, since each Class member must prove detrimental reliance to recover actual damages under EFTA, individualized questions of reliance will predominate over common issues.

With respect to the commonality requirement of Rule 23(a)(2), individual questions of detrimental reliance are not fatal to a finding of commonality.  See, Burstein v. Retirement Account Plan for Employees of Allegheny Health, 2004 WL 2612162, * 5-*6 (E.D.Pa., Oct. 21, 2004) (finding that although plaintiffs had to prove detrimental reliance to prevail on a claim, commonality requirement of Rule 23(a)(2) was satisfied, but class certification was improper under Rule 23(b)).  "A finding of commonality does not require that all class members share identical claims, and indeed factual differences among the claims of the putative class members do not defeat certification."  In Re Prudential Sales Litigation, 148 F.3d at 310.  Rather, the commonality requirement is satisfied "if the named plaintiff[ ] share[s] at least one question of fact or law with the grievances of the prospective class."  Id.  Here, the crux of the plaintiff's claim is that PNC failed to adequately disclose ATM fees on its ATM screens in violation of EFTA.  This claim -- as shared by members of the proposed Class -- is based on such common facts and legal questions as: whether PNC imposed an ATM fee without providing the requisite notice on its ATM screens, and whether PNC violated EFTA by its acts.  Accordingly, Rule 23(a)(2)'s commonality requirement is met.

Rule 23(a)(3) mandates that the claims or defenses of the representative plaintiff be typical of the claims or defenses of the class.  Under Rule 23(a)(3)'s typicality inquiry, we assess "whether the interests of the named plaintiff[ ] align[s] with the interests of the absent members."  Stewart, 275 F.3d at 227.  "To evaluate typicality, we ask whether the named

plaintiff['s] claims are typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiff[ ] are aligned with those of the class."  Beck, 457 F.3d at 295-296.

PNC argues that the claims of plaintiff Martz are not typical of those of absent class members, as it is unclear if he sustained any out-of-pocket loss in this case.  The record shows that Mr. Martz' financial institution, the Pennsylvania State Employees Credit Union ("PSECU"), "rebates up to $4 each month [into a customer's savings account] for ATM surcharges incurred when making withdrawals using another financial institution's ATM."[7]  Mr. Martz testified that while PSECU provided him rebates for some amounts he paid in service charges for using PNC's ATM's, it did not provide him rebates for fees he incurred at PNC's ATM's on April 14, 2006 and May 17, 2006.[8]  Furthermore, Martz seeks actual damages, as well as statutory damages under EFTA.  To recover statutory damages under EFTA, a plaintiff need not prove that he suffered actual damages as a result of a defendant's conduct. See, Burns v. First American Bank, 2006 WL 3754820, * 6 (N.D.Ill, Dec., 19, 2006), citing Bisbey v. D.C. National Bank, 793 F.2d 315, 318-319 (D.C.Cir. 1986).

Under Rule 23(a)(3), the typicality requirement is met if a plaintiff's claim arises from the same event or course of conduct which gives rise to the claims of other class members and is based on the same legal theory.  Eisenberg v. Gagnon, 766 F.2d 770, 786 (3d Cir. 1985), cert. denied, 474 U.S. 946 (1985).  "Cases challenging the same unlawful conduct which affects both the named plaintiff[ ] and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims."  Stewart, 275 F.3d at

---

7. See, Martz deposition Exhibit 9 (at Exhibit D to PNC's brief opposing class certification).

8. See, Martz deposition at pp. 222-224, 229-230.

6

227.  Here, since the plaintiff's EFTA claim arises from the same alleged misconduct and is

based on the same legal theory as those of the proposed Class, the typicality requirement is met.

Rule 23(a)(4) requires that the representative party will fairly and adequately

protect the interests of the Class.  To determine if a plaintiff can adequately represent the Class

under Rule 23(a)(4), we assess the following factors: (1) "the interests of the named plaintiff[ ]

must be sufficiently aligned with those of the absentees", and (2) "class counsel must be qualified

and must serve the interests of the entire class."  Georgine v. Amchem Products, 83 F.3d 610,

630 (3d Cir. 1996) (emphasis in original), aff'd., 521 U.S. 591 (1997).  In addition, "a class

representative must be part of the class and possess the same interest and suffer the same injury

as the class members."  Amchem Products, Inc.v. Windsor, 521 U.S. 591, 625-26 (1997).

With respect to class counsel, it appears that the representing attorneys are

qualified and will serve the interests of all Class members.[9]  As to named plaintiff Paul Martz,

however, PNC insists that he will not adequately serve the interests of all Class members due to

his close friendship with attorney John Blythin of the Ademi & O'Reilly law firm, who was his

roommate for several years in college and thereafter.  According to PNC, based on Mr. Martz'

close relationship with attorney Blythin, Martz will be primarily interested in furthering the

interests of Blythin and his law firm, rather than the interests of the Class.

"The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest

between named parties and the class they seek to represent."  Amchem Products, 521 U.S. at 625.

In cases as here, where a class representative has "[a] personal relationship with a member of the

---

9.   See Exhibits A-C attached to the plaintiff's brief in support of class certification, which
lists the law firm biographies and litigation experience of Ademi & O'Reilly, LLP, Miller Law,
LLC, and the Law Office of Alfred G. Yates, Jr.

law firm representing [him]", it does not, standing alone, warrant a finding that he is an inadequate class representative.  Weikel v. Tower Semiconductor, Ltd., 183 F.R.D. 377, 398 (D.N.J. 1998).[10]  In each case, a court must undertake a "stringent examination of the adequacy of class representation".  In re Fine Paper Antitrust Litigation, 617 F.2d 22, 27 (3d Cir. 1980).

Here, the record shows that Mssrs. Martz and Blythin were roommates for several years in college and thereafter, and they have remained close friends since then; that attorney Blythin approached Martz about serving as the named plaintiff in this case; and that Mr. Martz is also serving as the named plaintiff in another putative class action brought by Mr. Blythin's law firm alleging similar EFTA violations, i.e., Martz v. Citizens Bank, No. 07-CV-361 (W.D.Pa).[11]

When a close personal relationship exists between the named representative and class counsel, "courts fear the danger of champerty".  London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1254 (11th Cir. 2003), quoting Susman v. Lincoln Am. Corp., 561 F.2d 86, 91 (7th Cir. 1977).   That is especially true in cases as here, where attorneys' fees will greatly exceed the class representative's recovery.  London, supra, 340 F.3d at 1254[12]; accord, Mowry v. JP Morgan Chase Bank, Slip Copy, 2007 WL 1772142, * 4 (N.D.Ill., June 19, 2007) ("Given that the

--------

10.   Even in cases where a class representative has a "close familial relationship" with class counsel, district courts in this circuit are split as to whether it creates a potential conflict of interest.  Compare, Zlotnick v. TIE Communications, Inc., 123 F.R.D. 189, 194 (E.D.Pa. 1988) (refusing to certify class representative whose son was class counsel, fearing it could create an unnecessary appearance of impropriety), with Lewis v. Goldsmith, 95 F.R.D. 15, 20-21 (D.N.J. 1982) (certifying a class representative whose uncle was class counsel).

11.   See, PNC's brief opposing the current motion at p. 13 (with citations to the record).

12.   Under EFTA, the maximum recovery of statutory damages in this case is $500,000.  See, 15 U.S.C. § 1693m(a)(2)(B).  Assuming a class size of 14,871,648 (based on the transactions at issue), PNC avers that about 3 cents would be paid to each class member in statutory damages.

potential recovery for Plaintiffs is minimal compared to the potentially high amount of attorneys' fees that may be awarded, [the class representative] may be more concerned with helping to maximize the monetary return of his friend, [class counsel], than to zealously advocate on behalf of the class' interests"). As explained in London, "courts fear that a class representative who is closely associated with the class attorney will allow settlement on terms less favorable to the interests of absent class members." 340 F.3d at 1254 .

PNC also believes that Martz is an inadequate Class representative, as he has abdicated control of this litigation to Class counsel. As PNC avers, Mr. Martz was not even involved in the decision to sue it; rather, attorney Blythin approached Martz and spoke to him about filing this class action against it.[13] Mr. Martz insists he has not abdicated his role in this case, as evinced by the following: he reviewed the complaint before it was filed and understood the nature of the claims and the damages sought; he assisted counsel in preparing responses to PNC's written discovery requests; he reviewed documents in preparation for his deposition; he understood that as Class representative, he would be speaking on behalf of other Class members; and he affirmed his willingness to take this case to trial.[14]

Having considered the parties' stance on this issue, we do not believe that Mr. Martz is an adequate Class representative. Not only is Martz' close friendship with attorney Blythin a factor that could create a possible conflict of interest, but Martz admits he is not certain if he is a member of the Class he seeks to represent. As discussed above, Mr. Martz seeks to certify a class of consumers who initiated an electronic funds transfer at certain PNC ATM's

---

13.   See, Martz deposition at pp. 45-50.

14.   See, plaintiff's reply brief at p. 5, citing the deposition testimony of Mr. Martz.

whose screen notified them that they "may" be charged a fee, after which they were charged a fee for withdrawing cash there.  Significantly however, Mr. Martz testified that he does not know if PNC's ATM screens notified him that he "may" be charged a fee, "will" be charged a fee, or provided no notice at all when he conducted his transactions at issue.[15]

The record shows that between August 1, 2005 and July 31, 2006, when a non-PNC account-holder inserted a card into a PNC ATM, the ATM displayed one of two screens: one screen displayed a notice that "This PNC Terminal May Charge A $X.XX Fee For A Cash Withdrawal"..., while the other screen notified users that "This PNC Terminal Charges A $X.XX Fee For A Cash Withdrawal"...[16]  Mr. Martz concedes that he has no idea which notice was displayed on PNC's ATM's when he conducted his four transactions, as he merely skimmed the ATM screen and did not fully read it.[17]  At his deposition, Martz was asked and answered the following questions:

> Q.      Do you even know if you read the word may?
>
> A.      I don't remember.
>
> Q.      Do you even know that that screen said may and not will?
>
> A.      No, I don't know.  I specifically don't remember.[18]
>
> .......
>
> Q.      How do you know you were harmed at all?  Isn't it conceivable that those

---

15.   See, Martz deposition at p. 142.

16.   See, declaration of Harry C. Cornell at ¶¶ 3-5 (at Exhibit B to PNC's opposition brief).

17.   See, Martz deposition at pp. 139-140, 143.

18.   Id. at p. 139.

screens said you will be charged a fee?

A.    It's conceivable.[19]

.......

Q.    You have no basis to support your factual allegation that the screen you used – the four PNC ATM transactions you discussed here said may, will, or didn't say anything at all?

A.    I'll agree with that.

Q.    Well, how then did you file a Complaint alleging that it said something but you don't know what it said?

A.    I trust my counsel that that's what is said.

Q.    Your counsel wasn't there that day with you, sir.

A.    You're correct.

Q.    How would your counsel know what the screen said on April 4th, 2006, at the PNC ATM you used?

A.    I don't know.[20]

.......

Q.    So it's not even clear you're a member of this class that you seek to represent, is it?

A.    I believe I am.

Q.    What is the basis for your belief?

A.    I mean, again, I trust the investigation of my counsel.

Q.    But again your counsel wasn't there with you on April 4th or 14th?

---

19.   Id. at p. 140.

20.   Id. at pp. 142-143.

A.     That's correct....

Q.     Do you have a basis for your belief other than the investigation of Counsel who were not present with you on the days you used the ATM's that you're a member of this class?

A.     No.

Q.     Isn't it entirely possible that you're not a member of this class?

A.     If the investigation of my counsel is incorrect, yes.[21]

As previously mentioned, the United States Supreme Court has stated: "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Amchem Products, 521 U.S. at 625-626.  Martz concedes it is conceivable he is not a member of the Class and suffered no injury, as he does not know if PNC's ATM screens notified him that he would be charged a fee, or he "may" be charged a fee.

"In considering whether certification is proper, we refrain from conducting a preliminary inquiry into the merits." Barnes v. American Tobacco Co., 161 F.3d 127, 140 (3d Cir. 1998), cert. denied, 526 U.S. 1114 (1999).  "At the same time, we must carefully examine the factual and legal allegations." Id.  Based on Mr. Martz' above admission, a potential conflict exists between his interests and those of the Class, as Martz may spend more time trying to prove his individual claim than he spends representing the claims of absent Class members who, unlike Martz, can presumably verify that they received improper notice from PNC's ATM screens. Having assessed this factor, as well as Martz' close friendship with attorney Blythin, it appears that Mr. Martz' interests may not be sufficiently aligned with those of the Class.  Accordingly, he is not an adequate representative under Rule 23(a)(4).

---

21.   Id. at pp. 145-146.

We also find that class certification is improper under Rule 23(b)(3).  In addition to meeting the prerequisites of Rules 23(a)(1)-(4), a plaintiff seeking class certification must show that the action is maintainable under either Rule 23(b)(1),(2),or (3). F.R.Civ.P. 23(b).  As noted above, the plaintiff contends that the Class can be maintained under Rule 23(b)(3).  To qualify for certification under 23(b)(3),

> a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must predominate over any questions affecting only individual members; and class resolution must be superior to other available methods for the fair and efficient adjudication of the controversy.

Amchem Products, 521 U.S. at 615.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  Id. at 623.  It "trains on the legal or factual questions that qualify each class member's case as a genuine controversy".  Id.  Here, the proposed Class is not sufficiently cohesive, as common factual and legal issues predominate over individual ones.

For instance, the plaintiff seeks to recover actual damages under EFTA.  The few reported cases that have discussed the actual damages provision of EFTA have found that to recover actual damages, a plaintiff must establish causation of harm in the form of detrimental reliance.  See, e.g., Brown v. Bank of America, 2006 WL 2989031, *6 (D.Mass., Oct. 17, 2006) (finding that plaintiffs must "establish causation of harm in the form of detrimental reliance" to recover actual damages under EFTA, relying on case law interpreting the identical actual damages provision in the Truth in Lending Act); also see, e.g., Polo v. Goodings Supermarkets, Inc., 232 F.R.D. 399, 408 (M.D.Fla., 2004) (stating that plaintiff "offers no authority for his

inference that EFTA excuses plaintiffs from proving that their actual damages flowed from a detrimental reliance on erroneous fee postings").

To prove that they detrimentally relied on PNC's alleged improper notice, each Class member would have to show that: (1) the ATM screen informed him/her that a fee "may" be charged for a cash withdrawal; (2) the Class member did not understand that he/she would be charged a fee upon continuing with the transaction (even though users had to press a button on PNC's ATM's agreeing to "accept" the fee to continue with the transaction); and (3) the Class member would not have made the cash withdrawal had he/she known a fee would be charged.

It is apparent from Mr. Martz' testimony that to prove actual damages, individual issues of fact will predominate over common ones.  As recited above, Martz testified that he did not fully read the ATM screen upon making his electronic fund transfers; thus, he does not know if the screen informed him that he "may" be charged a fee, or he "will" be charged a fee.[22]  Martz also testified that regardless of what the screen informed him, he knew that he would be charged a fee for using PNC's ATM's.[23]  Clearly, Martz' admissions will not be shared by all Class members, who will proffer differing facts to support their claims for actual damages.

In Polo, supra, the Court denied class certification in an EFTA case; in considering the plaintiff's need to prove actual damages, the Court explained: "any common issues of fact and law would come nowhere near predominating over the individualized assessment required for each class member's claim, including reliance and damages."  232 F.3d at 409.  Similarly here, the proposed Class is not sufficiently cohesive to satisfy the

22.   Id. at pp. 139-140, 143.

23.   Id. at pp. 104-107, 209.

predominance requirement.

        It also appears that a class action is not superior to other available methods for adjudicating this case.  In determining superiority, a court may assess such factors as: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (c) the desirability or undesirability of concentrating the litigation in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action.  F.R.Civ.P. 23(b)(3).

        The last of these factors -- difficulties that are likely to arise in managing a class action -- makes a class action inferior to other methods for adjudicating this matter.  One such problem is identifying and notifying members of the proposed Class.  As mentioned above, during the proposed Class period, there were 14,871,648 transactions at issue made by non-PNC cardholders at PNC ATM's located in Pennsylvania, New Jersey, Virginia, Ohio, Kentucky and the District of Columbia.[24]  However, PNC does not maintain the names and/or addresses of non-PNC account holders who use its ATM's[25]; thus, the process of identifying millions of potential Class members would be extremely burdensome and expensive.[26]

        Indeed, the record shows that to identify members of the proposed Class, PNC would first have to generate a report setting forth the card number associated with each

---

24.   See, declaration of Sandra W. Dervin at ¶¶ 1-2.

25.   See, declaration of Harry C. Cornell at ¶ 9.

26.   Id.

transaction that occurred at an ATM displaying a screen stating that a fee "may" be charged.[27] That information would have to be sent to six Electronic Funds Transfer Networks and two credit card companies that process transactions through PNC's ATM's.[28]  The Electronic Funds Transfer Networks ("Networks"), some of which serve thousands of financial institutions, would then have to identify which financial institution issued each Class member's card.[29]  If the Networks provided that information, each financial institution would have to disclose the card user's identity and address at the time he/she undertook the ATM transaction.[30]  It is unlikely, however, that these financial institutions would voluntarily disclose such confidential information, especially in instances where a financial institution's customers have explicitly instructed the entity to keep their names and addresses confidential.[31]  Thus, to obtain the necessary information, a court would likely have to issue subpoenas directed to thousands of financial institutions.[32]  Accordingly, it does not appear that a class action is superior to other available methods for adjudicating this matter.  See, Mowry, supra, 2007 WL 1772142, at * 6 (ruling that EFTA case was unmanageable as a class action due to the difficulty of identifying and notifying the potential twenty million class members).

Therefore, for reasons discussed above, it is recommended that the plaintiff's

---

27. Id. at ¶ 10.

28. Id. at ¶ 11.

29. Id. at ¶¶ 11-12.

30. Id. at ¶ 13.

31. Id. at ¶ 14.

32. Id. at ¶ 15.

16

motion for class certification (Document No. 36) be denied.

Within thirteen (13) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation.  Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Respectfully submitted,

_____ s/ ROBERT C. MITCHELL
United States Magistrate Judge

Dated: July 11, 2007

17