IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAUL A. MARTZ, )
        Plaintiff, )
)
vs ) Civil Action No. 06-1075
)
PNC BANK, N.A., )
        Defendant. )

MEMORANDUM & OPINION

MITCHELL, Magistrate Judge:

      Presently before the Court is a motion for attorneys' fees and reimbursement of expenses submitted by plaintiff's counsel's (Document No. 60). For reasons discussed below, the motion will be granted, and plaintiffs' counsel will be awarded attorneys' fees in the amount of $24,866.20 and costs in the amount of $545.00.

      On August 11, 2006, plaintiff Paul A. Martz commenced this action by filing a two-count purported class complaint against defendant PNC Bank, N.A. ("PNC Bank"). In his complaint, the plaintiff alleged that PNC Bank violated the Electronic Fund Transfers Act, 15 U.S.C. § 1693, et seq., and regulations promulgated thereunder, 12 C.F.R. § 205, et seq., (collectively, "EFTA") (Count I), for which it was unjustly enriched (Count II). According to the plaintiff, PNC Bank violated EFTA, because its automated teller machines ("ATMs") did not provide him notice that a fee **will** be charged and collected as part of his transaction; rather, its ATMs informed him that a charge **may** be assessed, even though PNC then assessed a fee and collected it as part of the electronic fund transfer.

      On September 21, 2006, PNC Bank moved to dismiss the unjust enrichment claim

in Count II for failure to state a viable claim, and to partially dismiss the EFTA claim in Count I to the extent the plaintiff sought actual damages. In an Order dated December 29, 2006, the Court granted PNC Bank's motion to dismiss Count II and denied it in all other respects.[1]

On May 1, 2007, the plaintiff moved for class certification. PNC Bank opposed the motion for class certification on several grounds, noting that the plaintiff testified at his deposition that he did not know if PNC Bank's ATM screens notified him that he "may" be charged a fee, "will" be charged a fee, or provided any notice at all when he conducted his transactions. In an Order dated August 15, 2007, the Court denied the plaintiff's motion for class certification.[2]

On January 30, 2008, the parties executed a Settlement Agreement and Release which provides in pertinent part:

> 1. In exchange for the full and complete settlement and release of all Claims [in this case], PNC Bank shall pay to Mr. Martz the sum of U.S. $1,100.00...
>
> 2. U.S. Magistrate Judge Mitchell shall decide the amount of attorneys' fees and costs, if any, to which Mr. Martz and his counsel are entitled ...
> .........
>
> 10. Nothing contained herein is intended as an admission of liability, fault, or wrongdoing by any Party hereto. To the contrary, PNC Bank denies each and every of Mr. Martz's allegations against it. Specifically, PNC Bank denies that it violated the EFTA, that the notice on its ATM's is in any way inadequate, or that it damaged or harmed Mr. Martz in any way.[3]

On February 20, 2008, the parties filed a stipulation of dismissal with prejudice

---

1. See, Document No. 32.

2. See, Document No. 50.

3. See, Document No. 62 at Exhibit A.

pursuant to F.R.Civ.P. 41(a)(1), stipulating "that this action is dismissed with prejudice but ... the Magistrate Judge shall retain jurisdiction over this matter [to decide the remaining issue of the amount of attorneys' fees and costs, if any, to which plaintiff and his counsel are entitled]."[4] In an Order dated February 20, 2008, the Court directed the plaintiff to file a motion on the issue of attorneys' fees and costs, and a briefing schedule was set.

On March 10, 2008, plaintiff's counsel moved for an award of attorneys' fees and reimbursement of expenses which they support through a declaration from Alfred G. Yates, Jr., one of plaintiff's attorneys (the "Yates' declaration"). In their motion, plaintiff's counsel seek attorneys' fees in the amount of $101,799.06 and the reimbursement of expenses in the amount of $1,072.72 in connection with the prosecution of this case.[5] In the Yates' declaration and exhibits attached thereto, plaintiff's counsel aver that their law firms of Ademi & O'Reilly, LLP, Miller Law, LLC, Faucher and Cafferty, LLP, and the Law Office of Alfred G. Yates, Jr., PC spent 305.86 hours in the prosecution of this case with an aggregate lodestar of $101,799.06, for which they incurred aggregate expenses of $1,072.52.[6]

In relevant part, EFTA provides:

> Except as otherwise provided by this section and section 1693h of this title, any person who fails to comply with any provision of this subchapter with respect to any consumer, except for an error resolved in accordance with section 1693f of this title, is liable to such consumer in an amount equal to the sum of –
> .....

---

4. See, Document No. 57.

5. See, Document No. 60.

6. See, Document No. 62 and Exhibits B-1 through B-4 attached thereto.

> (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1693m(a)(3).

In support of their motion, plaintiff's counsel assert that their requested award of attorneys' fees and costs is fair and reasonable. They also insist that their client, Mr. Martz, was the prevailing party in this suit, as his settlement recovery of $1,100 was an excellent result which exceeded his potential statutory and actual damages recovery.

"The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable." Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990). To meet their burden, counsel must "submit evidence supporting the hours worked and rates claimed." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). In a statutory fee case, as here, the party opposing the fee award has the burden to challenge the reasonableness of the requested fee by affidavit or brief. Rode, supra, 892 F.2d at 1183 (citation omitted). "Once the adverse party raises objections to the fee request, the district court has a great deal of discretion to adjust the fee award in light of those objections." Id.

On April 7, 2008, PNC Bank filed a response opposing the current motion. In opposing the motion, PNC Bank does not dispute that the plaintiff is the prevailing party in this suit, notwithstanding his limited success. However, it argues that plaintiffs' counsel is not entitled to attorneys' fees and costs as requested, because their request is not reasonable.

In objecting to counsel's request for fees, PNC Bank asserts that at most, this Court should award attorneys' fees in the amount $4,561.54. According to PNC Bank, while plaintiffs' counsel claims to have billed 305.86 hours in this case, they only reasonably expended

4

60.51 hours litigating it.[7] In opposing the current motion, PNC Bank also argues that the lodestar should be reduced due to the plaintiff's limited success in this case.

"The most useful starting point for determining the amount of a reasonable fee is the number of hours expended on the litigation multiplied by a reasonable hourly rate." Hensley, supra, 461 U.S. at 433. This computation, called the lodestar, "is strongly presumed to yield a reasonable fee." Washington v. Phila. County Court of Common Pleas, 89 F.3d 1031, 1035 (3d Cir. 1996), citing City of Burlington v. Dague, 505 U.S. 557 (1992).

With respect to hours expended on a case, the Court in Hensley stated: "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." Hensley, 461 U.S. at 433. "The district court also should exclude from the initial fee calculation hours that were not reasonably expended." Id. at 434. "Hours are not reasonably expended if they are excessive, redundant, or otherwise unnecessary." Rode, 892 F.2d at 1183. In Hensley, the Court also instructed that "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded." 461 U.S. at 440.

It is PNC Bank's position that the Court should reduce the hours said to be

---

7. See, Exhibit H to PNC Bank's brief opposing the current motion (which lists the hours and rates billed by plaintiffs' counsel and PNC Bank's proposed lodestar). In opposing the current motion, PNC Bank notes that plaintiff's counsel "block-billed" their time, so in instances where an attorney billed time for working on two tasks, it generally assumed the time was split 50-50 on each task. Similarly, where an attorney billed time for working on and/or reviewing the complaint, the answer, and matters related to opposing PNC Bank's motion to dismiss -- all of which pertained to both the EFTA claim and the state law claim -- it assumed the time was split 50-50 between the EFTA claim and the state law claim. See, Exhibit D to PNC Bank's opposition brief (which sets forth the invoices submitted by plaintiff's counsel and how PNC Bank categorized the time billed).

expended by plaintiffs' counsel on several matters, including: (1) 120.36 hours spent pursuing class certification, as the plaintiff's class claims were not successful[8]; (2) 31.55 hours spent on the state law claim for unjust enrichment, as the state law claim was unsuccessful, and the plaintiff only has a statutory right to recover fees if he establishes a violation of EFTA[9]; (3) 3.41 hours spent working on other EFTA cases which plaintiff's counsel billed in this suit[10]; (4) 9.94 hours spent working on affirmative discovery which plaintiff's counsel served late and in opposing PNC Bank's motion for a protective order in response to said discovery, as the Court struck plaintiff's untimely discovery requests in an Order dated June 11, 2007[11]; (5) 4 hours billed by Ademi & O'Reilly for "client development", as the plaintiff testified that attorney John Blythin of Ademi & O'Reilly approached him and asked him to serve as the named plaintiff[12]; (6) 8.13 hours billed by Ademi & O'Reilly for research of an appeal which it never took, for a motion for summary judgment which it never filed, and for drafting a deposition notice for a

---

8. Thus, PNC Bank insists the Court should reduce the hours billed by the Yates' Law Office by 38.67 hours, Ademi & O'Reilly's hours by 60.52 hours, Miller Law's hours by 6.30, and Cafferty Faucher's hours by 14.87. See, Exhibit G to PNC Bank's brief opposing the current motion, which is a declaration of its attorney, Michael H. Sampson (hereinafter the "Sampson declaration") at ¶¶ 8-9, and Exhibits D and E to PNC Bank's opposition brief.

9. Thus, PNC Bank insists the Court should reduce the hours billed by the Yates' Law Office by 14.75 hours, Ademi & O'Reilly's hours by 12.73 hours, and Cafferty Faucher's hours by 4.07. See, Sampson declaration at ¶¶ 8-9 and Exhibits D and E to PNC Bank's opposition brief.

10. Thus, PNC Bank insists the Court should reduce the time billed by the Yates' Law Office by 2.62 hours, Ademi & O'Reilly's hours by .69 hours, and Cafferty Faucher's hours by .1 hours. See, Sampson declaration at ¶¶ 4-9 and Exhibits C, D and E to PNC Bank's opposition brief.

11. Thus, PNC Bank insists the Court should reduce the time billed by the Yates Law Office by 1.26 hours and Ademi & O'Reilly's hours by 8.68 hours. See, Sampson declaration at ¶¶ 8-9 and Exhibits D and E to PNC Bank's opposition brief.

12. See, Sampson declaration at ¶¶ 8-9 and Exhibits D and E to PNC Bank's opposition brief.

deposition which did not occur[13]; (7) 4.21 hours billed for administrative tasks which could have been delegated to a paralegal or a secretary[14]; (8) 15.91 hours billed for unspecified legal research and discovery matters, as the Court may reduce an award when the documentation of hours is inadequate[15]; (9) 37.685 hours billed by the Yates Law Office and Ademi & O'Reilly as excessive, redundant or unnecessary because between the two firms, they billed 6.12 hours for work on *pro hac vice* admissions of certain counsel, 23.63 hours responding to PNC Bank's motion to dismiss which pertained to EFTA, and 17.62 hours preparing for and/or attending conferences and hearings which did not require the participation of counsel from both firms, such that those hours billed should be reduced by half; further, counsel for Ademi & O'Reilly spent 14 hours traveling to and from Pittsburgh for the plaintiff's deposition which is the home of the Yates Law Office, so those hours billed were redundant or unnecessary[16]; and (10) the remaining 3.2 hours and 6.01 hours of time billed by Miller Law and Cafferty Faucher respectively, as no lawyer from those firms was ever admitted *pro hac vice* to this district, and the hours billed are redundant of work performed by Ademi & O'Reilly and/or the Yates' Law Office.[17]

---

13.  Id.

14.  Thus, PNC Bank insists the Court should reduce the time billed by Ademi & O'Reilly by 3.84 hours, the Yates' Law Office by .27 hours, and Cafferty Faucher by .1 hour. See, Sampson declaration at ¶¶ 8-9, and Exhibits D and E to PNC Bank's opposition brief.

15.  Thus, PNC Bank insists the Court should reduce the time billed by Ademi & O'Reilly by 13.26 hours and Cafferty Faucher's hours by 2.65 hours. See, Sampson declaration at ¶¶ 8-9 and Exhibits D and E to PNC Bank's opposition brief.

16.  See, Sampson declaration at ¶¶ 8-9 and Exhibits D and E to PNC Bank's opposition brief.

17.  Id.

On April 16, 2008, plaintiff's counsel filed a reply brief in support of their motion, reiterating their stance that their request for attorneys' fees and costs is reasonable. On April 23, 2008, a hearing was held on the matter, and counsel for the parties presented arguments in support of their positions.

Having considered the arguments, we find that the 120.36 hours billed by plaintiff's counsel pursuing class certification are unreasonable. That is because (1) the class claims were unsuccessful, and (2) counsel has not shown that any time expended on the class claims were intrinsically connected to pursuit of the plaintiff's individual EFTA claim on which he had partial success. In support of their positions on the fee request pertaining to class certification, both parties cite <u>Hatfield v. Oak Hill Banks</u>, 222 F.Supp.2d 988 (S.D.Ohio 2002). In <u>Hatfield</u>, plaintiffs' counsel sought attorney fees for an unsuccessful pursuit of class claims which, as here, were not distinct from individual claims upon which the plaintiffs were deemed the prevailing party by virtue of a settlement agreement between the parties. <u>Id.</u> at 989-992. In ruling on the fee request, the Court in <u>Hatfield</u> stated:

> [A]ny hours that were devoted solely to the pursuit of the class claims should be excluded from the total number of hours for which the Plaintiffs seek fees. The Court recognizes, however, that certain aspects of the class claims were so intertwined with the individual claims ... that Plaintiffs' counsel would have expended virtually the same amount of time conducting certain tasks even if the class claims were not being pursued.
>
> Therefore, the Court will exclude from the Plaintiffs' total number of hours for which they seek fees any hours that were devoted solely to the pursuit of the class claims. The Court will not exclude any hours that were devoted to the class claims, but were intrinsically connected to the pursuit of the individual claims...

Id. at 993. We agree with this reasoning.

At the hearing held on the motion for fees, plaintiff's counsel surmised -- literally guessed -- that they spent approximately half their time working on matters related to class certification that were intrinsically connected to the pursuit of the plaintiff's individual EFTA claim. Notably however, counsel proffered no documentary evidence to support that assertion. As the Supreme Court reiterated in Hensley, counsel has the burden to "submit evidence supporting the hours worked and rates claimed." 461 U.S. at 433. Here, absent evidence showing the hours spent by individual attorneys on class claims that were intrinsically connected to the pursuit of Mr. Martz' individual EFTA claim, we cannot award attorneys' fees for time expended on the unsuccessful class claims.

We do find that the 4 hours billed for client development were reasonable[18], as were the other half of the 23.66 hours spent by the Yates' Law Office and Ademi & O'Reilly responding to the motion to dismiss which pertained to EFTA (i.e., 11.83 hours, which PNC Bank deemed redundant).[19] With respect to those hours deemed administrative tasks by PNC Bank, we agree that .48 hours billed by Ademi & O'Reilly for "review and set up [of] ecf logins" and .27 hours billed by the Yates Law Office to "contact and arrange for photos"(.17 hours) and

---

18. At the hearing, plaintiff's counsel represented that the 4 hours billed for "client development" did not entail the solicitation of Mr. Martz as a client.

19. Our computation of these hours differ slightly from those asserted by PNC Bank. We did not include the hours billed by Faucher and Cafferty on the motion to dismiss for two reasons: (1) no counsel from that firm was admitted *pro hac vice* to this district, see, e.g., Idaho Sporting Congress, Inc. v. Alexander, 23 Fed.Appx. 713, 714 (9th Cir. 2001) ("Failure of ... counsel to properly and timely secure *pro hac vice* admission before the district court was a sufficient reason to deny [their] application for attorneys' fees"); and (2) their work was excessive or redundant of that performed by the Yates' Law Office and Ademi & O'Reilly.

"review [c]hange of [a]ddress" (.10 hours) could have been delegated to personnel other than counsel; however, the other tasks cited in this category pertaining to Ademi & O'Reilly -- comprising 3.36 hours --appear to be reasonably billed. As to the other hours recited above which PNC Bank challenges[20], we agree they should be reduced for reasons advanced by the defendant.[21] After reviewing the invoices submitted by plaintiff's counsel, as well as PNC Bank's categorization of the invoices, and having heard the parties' arguments on these matters, we will reduce the hours billed by counsel to 79.70 hours.[22]

Insofar as the hourly rates charged by plaintiffs' counsel, PNC Bank argues the rates are unreasonable. "Generally, a reasonable hourly rate is to be calculated according to the prevailing market rates in the relevant community." Rode, 892 F.2d at 1183, citing Blum v. Stenson, 465 U.S. 886, 895 (1984). "Thus, the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id.

To demonstrate that their hourly rates are reasonable, plaintiffs' counsel cite one rate survey from 2004 which lists the range of rates charged by Reed Smith, LLP -- counsel for PNC Bank -- from which they conclude that their hourly rates fall within the community standard. At the hearing, however, PNC Bank showed that the rate survey relied upon by

---

20. See, pp. 6-7 supra.

21. At the hearing, plaintiff's counsel admitted they made some billing errors. They also failed to contest many of PNC Bank's aforesaid challenges to their hours billed.

22. In deriving at our total of 79.70 hours, we took the 60.51 hours reasonably billed by plaintiff's counsel to which there was no objection (as set forth in the right-hand column of Exhibit H to PNC Bank's brief opposing the current motion), and added those hours discussed above (at pp. 9-10) which we believe were reasonably billed.

plaintiff's counsel was based on a "nationwide" sampling of rates charged by Reed Smith, LLP and did not encompass the Pittsburgh market alone.

In contrast, PNC Bank prepared a chart based on a study performed by Altman Weil, Inc., which compared the rates charged by plaintiffs' counsel in this case with the average rates charged by attorneys practicing in Pennsylvania having similar years of experience.[23] PNC Bank avers that based on its chart, plaintiffs' counsel's rates are slightly higher than the average rates for attorneys with similar experience practicing in Pennsylvania.

Still, we find that the hourly rates charged by counsel for Ademi & O'Reilly and the Yates' Law Office are reasonable.[24] Thus, we compute the lodestar in this case as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| G. Rutledge | 25.30 | $340.00 | $8,602.00 |
| A. Yates | 10.30 | $390.00 | $4,017.00 |
|  | 1.37 | $340.00 | $ 465.80 |
| J. Altman | 0.38 | $235.00 | $ 89.30 |
| J. D. Blythin | 30.15 | $250.00 | $7,537.50 |
| R. Lilly | 6.94 | $325.00 | $2,255.50 |
| C. M. Mather | 0.16 | $235.00 | $ 37.60 |
| D. M. Victor | 5.10 | $365.00 | $1,861.50 |
|  | **79.70** |  | **$24.866.20** |

Once the Court determines the lodestar, it has discretion to adjust it downward if

---

23. See, Exhibit F to PNC Bank's brief opposing the current motion.

24. See, Document No. 62 at Exhibits B-1 and B-4.

the lodestar is not reasonable in light of the results obtained. Rode, 892 F.2d at 1183, citing Hensley, 461 U.S. at 434-37. In Hensley, the Supreme Court stated:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation...
>
> If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This may be true even where the plaintiff's claims were interrelated, non-frivolous, and raised in good faith...
>
> There is no precise rule or formula for making these determinations. The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment.

461 U.S. at 435-37.

PNC Bank argues that the lodestar should be reduced due to the plaintiff's limited success in this case. It asserts that in commencing this suit, the plaintiff sought to recover, on behalf of himself and a purported class of similarly situated persons, damages pursuant to 15 U.S.C. § 1693m, as well as the disgorgement of fees which PNC Bank was said to have improperly collected during the class period. Under EFTA, the plaintiff could have recovered a statutory penalty of $500,000.[25] Further, since there were millions of transactions conducted by proposed class members at PNC Bank ATM's for which the plaintiff sought the disgorgement of alleged improper fees, the monetary recovery in this case could have been substantial.

As such, PNC Bank asserts that the plaintiff's recovery of $1,100 is a paltry sum

---

25. See, 15 U.S.C. § 1693m(a)(2)(B).

compared to the damages he was seeking. Based on the plaintiff's limited success in this case, PNC Bank insists the lodestar should be reduced by 75%.

We believe the above-computed lodestar is reasonable. Hence, we will not reduce it further.

As for counsel's request for reimbursement of costs totaling $1,072.52, PNC Bank argues the amount is unreasonable.[26] According to PNC Bank, counsel's costs should be reduced to $425.00 for the following reasons: (1) the Yates' Law Office, located in this district, should not recover $120 filing fees for the *pro hac vice* motions, nor should it recover $96.80 for a process server, as PNC Bank would have accepted service of the complaint had it been requested to do so; (2) Ademi & O'Reilly should not recover $312.86 for travel expenses to and from Pittsburgh, as the Yates' Law Office is based in Pittsburgh; and (3) the $4.80 sought by Miller Law and the $113.06 sought by Cafferty Faucher should not be recovered, as no attorney from these firms was admitted *pro hac vice,* and further, their expenses claimed for copying and postage should have been included in their regular hourly rates. PNC Bank believes the only reasonable costs incurred by plaintiff's counsel are the $350.00 paid by the Yates' Law Office for filing the complaint and the $75.00 it paid for photographs of the ATM's.

Having considered the parties' stance on this issue, we will award costs to the Yates' Law Office in the amount of $545, which includes $350.00 for filing the complaint, $120 for filing *pro hac vice* motions, and $75 paid for photographs of the ATM's.

An appropriate Order will be entered.

---

26. The costs and expenses said to be incurred by plaintiff's counsel are listed in Exhibit I to PNC Bank's opposition brief to the current motion.

O R D E R

AND NOW, this 5th day of May 2008, for the reasons set forth in the Court's Memorandum & Opinion,

IT IS HEREBY ORDERED that the motion for attorneys' fees and reimbursement of expenses submitted by plaintiff's counsel (Document No. 60) is granted, and that plaintiff's counsel is awarded attorneys' fees in the amount of $24,866.20. and costs in the amount of $545.00.

                                                s/ ROBERT C. MITCHELL
                                                United States Magistrate Judge